UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 02-60772-CV-DIMITROULEAS/ROSENBAUM

THOMAS A. LUKEN, as Assignee for
BUC INTERNATIONAL CORP.,

        Plaintiff,

v.

INTERNATIONAL YACHT COUNCIL,
LIMITED, BARBARA TIERNEY, MLS
SOLUTIONS, INC., WILLIAM PAZOS,
FLORIDA YACHT BROKERS
ASSOCIATION, INC., and BRADFORD
YACHT SALES, INC.,

        Defendants.
_____/

## ORDER

This matter comes before the Court upon Plaintiff BUC International Corporation's ("BUC") Motion to Compel MLS Solutions, Inc., to Produce Documents in Aid of Execution and First Set of Interrogatories in Aid of Execution ("Motion to Compel") [D.E. 1314], and Defendant MLS Solutions, Inc.'s ("MLS") Motion for Extension of Time to File Response to Plaintiff's Motion to Compel ("Motion for Extension of Time") [D.E. 1325]. The Court has reviewed the parties' Motions, supporting and responsive briefs, and the file in this case. Additionally, the Court has considered argument presented by counsel at a hearing held on the Motions on October 9, 2007, as well as supplemental briefing ordered by the Court during the October 9th hearing. Based on the filings and argument, the Court now grants Plaintiff's Motion to Compel and denies Defendant MLS's Motion for Extension of Time.

## I. BACKGROUND

Plaintiff BUC brought this action to recover damages, among other remedies, stemming from defendants' alleged copyright infringement of BUC's protected Yacht Listing. [D.E. 1]. Following a jury trial, the Court entered judgment for BUC in the amount of $1,598,278.00, plus interest, against Defendants MLS and International Yacht Council Limited ("IYC"). [D.E. 1137]. Recently, the Eleventh Circuit affirmed the judgment. [D.E. 1333].

After entry of the judgment, BUC served Defendant MLS with its Second Request for Production of Documents and First Set of Interrogatories in Aid of Execution ("Discovery Requests") on May 31, 2007. [D.E. 1314]. Therefore, MLS's responses to BUC's Discovery Requests were due June 30, 2007.

On June 14, 2007, however, G. Donovan Conwell, Jr., an attorney from Conwell, Sukhia, and Kirkpatrick, P.A. ("CSK"), MLS's counsel of record at the time, contacted BUC and requested a 30-day extension because MLS's corporate representative was going to be traveling abroad. [D.E. 1314, Ex. 1]. BUC agreed to allow MLS an additional thirty days to respond to BUC's Discovery Requests, thus, rendering MLS's responses due August 1, 2007. [D.E. 1314].

Instead of serving its responses, however, on August 1, 2007, MLS, again through Mr. Conwell, asked for another extension of time to respond to the Discovery Requests – this time for ten additional days. [D.E. 1314]. As a basis for its request, MLS advised BUC that the attorney in charge of the MLS matter had been out of town for the past week. *Id.* Although BUC agreed to another extension of time to respond, BUC limited the enlargement to five days. *Id.*

Later that same day, Mr. Conwell again contacted BUC, asking that BUC reconsider MLS's request for a ten-day extension. [D.E. 1314]. During this exchange, Mr. Conwell explained that

MLS needed the additional five days to respond to BUC's Discovery Requests because Mr. Conwell was uncertain whether MLS was going to retain CSK to represent MLS in connection with BUC's discovery in aid of execution. [D.E. 1314, Ex. 2]. On August 2, 2007, BUC subsequently agreed by e-mail to the requested extension, cautioning MLS that BUC would agree to no further enlargements of time to respond, advising MLS that BUC expected responses and not objections to the pending Discovery Requests, and causing MLS's discovery responses to be due on August 13, 2007. [D.E. 1314, Ex. 3]. MLS did not object to any aspect of BUC's August 2, 2007, e-mail.

August 13, 2007, came and went without BUC's receipt of MLS's responses to the Discovery Requests. [D.E. 1314]. Nor did MLS serve any objections to the Discovery Requests or file any motions with the Court regarding the Discovery Requests. [D.E. 1314, Docket Sheet].

On August 14, 2007, BUC contacted MLS to inquire about the status of MLS's responses to the Discovery Requests. [D.E. 1314]. MLS did not respond. *Id.*

The following day, August 15, 2007, BUC filed its Motion to Compel. [D.E. 1314]. In this Motion, BUC sought an order compelling MLS to respond to BUC's Discovery Requests within two days, deeming all objections to the Discovery Requests waived, and awarding reasonable attorneys' fees and costs associated with bringing the Motion to Compel. [D.E. 1314]. Under Local Rule 7.1.C.1(a), S.D. Fla., MLS's response to BUC's Motion to Compel was due August 31, 2007, but MLS filed no response. *See* Docket Sheet.

Instead, on September 4, 2007, MLS filed its Motion for Extension of Time to File Response to Plaintiff's Motion to Compel. [D.E. 1325]. In this Motion MLS stated that some time after August 15, 2007, it learned that the law firm of Kluger, Peretz, Kaplan & Berlin, P.L., which represented BUC at trial in this matter, filed an involuntary petition for bankruptcy against BUC.

*Id.* Based on this fact, Defendant IYC moved to stay the proceedings in the pending case. *Id.* (citing D.E. 1323). MLS joined in IYC's Motion. [D.E. 1325, at 3]. Consequently, MLS argued, the Court should "postpone[]" "any motion practice related to discovery in this case . . . until the Court rules upon the Motion for Stay." *Id.*

Additionally and alternatively, in its Motion for Extension of Time, MLS noted that also after August 15, 2007, it learned that on March 15, 2007, BUC had assigned all of its assets, including the judgment in this case, to Thomas K. Luken, to administer the estate of BUC, for the benefit of BUC's creditors, under Chapter 727 of the Florida Statutes. [D.E. 1325, at 2]. As a result, MLS suggested, BUC no longer had any interest in the judgment, and thus, had no standing to pursue discovery in aid of execution. [D.E. 1325, at 3-4]. MLS offered no reason for its failure to respond to BUC's Discovery Requests prior to learning in the second half of August, 2007, of the involuntary bankruptcy and the assignment of BUC's assets to Luken. BUC and MLS filed their Response to MLS's Motion for Extension of Time and Reply, respectively, on September 5 and 17, 2007. [D.E. 1327, 1330].

On September 21, 2007, the Court denied IYC's Motion for Stay. [D.E. 1331]. Thus, MLS's first basis for its Motion for Extension of Time to Respond to Plaintiff's Motion to Compel became moot.

By Order dated September 26, 2007, the undersigned set a hearing for October 9, 2007, regarding the BUC's Motion to Compel and MLS's Motion for Extension of Time. [D.E. 1335]. At the October 9th hearing, the Court explored whether BUC could properly conduct discovery in aid of execution, in light of the March 15, 2007, assignment of its assets to Luken, and ordered the parties to provide supplemental briefing on the issue by October 19, 2007. [D.E. 1343].

-4-

Additionally, the Court asked MLS to explain why MLS did not respond to BUC's Discovery Requests, which were originally due June 30th, then August 1st, then August 6th, and finally, August 13th – all before MLS, by its own admission, became aware of BUC's assignment to Luken and the involuntary bankruptcy.

Mr. Conwell appeared as counsel on behalf of MLS and stated that CSK was serving as BUC's appellate counsel at the time that BUC served its Discovery Requests on MLS by sending them to CSK. According to Mr. Conwell, at that point, MLS had not retained CSK to represent MLS during post-judgment district court proceedings, although Mr. Conwell conceded that he never so advised BUC until August 1, 2007. Mr. Conwell further indicated that at no point prior to the August 13, 2007, final deadline for MLS's responses to the Discovery Requests did MLS notify Mr. Conwell that CSK would be representing MLS during the post-judgment district court proceedings. Indeed, to the contrary, Mr. Conwell said that just before the August 13, 2007, final deadline for responding to BUC's Discovery Requests, MLS informed Mr. Conwell that MLS had retained a law firm other than CSK to represent MLS during the post-judgment proceedings. Consequently, Mr. Conwell did not respond to BUC's Discovery Requests. Only after BUC filed its Motion to Compel did MLS actually retain CSK to represent it in the post-judgment proceedings, Mr. Conwell asserted. After conferring with MLS, Mr. Conwell could not explain why MLS took so long to make its decision to retain CSK as counsel in the post-judgment proceedings in this matter.

In response, BUC noted that on April 19, 2006, contrary to Mr. Conwell's view that CSK served only as appellate counsel in this matter prior to filing MLS's Response on September 4, 2007, Mr. Conwell entered an appearance in this district court matter on behalf of MLS, requesting that "all future pleadings and notices" be sent to him at CSK. *See* D.E. 1296. BUC further pointed out

that the docket sheet in this district court case is devoid of any withdrawal of appearance on the part of either Mr. Conwell or CSK for MLS. Finally, BUC noted that the first time it learned of the possibility that CSK might not be representing MLS during the post-judgment proceedings was on August 1, 2007, after BUC had already granted to extensions of time to MLS to respond to BUC's Discovery Requests.

Following the October 9th hearing, BUC and MLS filed their supplemental briefs regarding whether, in view of BUC's assignment of assets to Luken, BUC could conduct post-judgment discovery in the instant case. [D.E. 1349, 1350]. On November 2, 2007, the Court issued an order substituting Luken for BUC as Plaintiff in this action [D.E. 1356], pursuant to BUC's motion requesting such relief. [D.E. 1361]. This fact renders moot the sole remaining argument supporting MLS's Motion for Extension of Time to Respond to BUC's Motion to Compel.[1] Consequently, MLS's Motion for Extension of Time is denied as moot.

## II. ANALYSIS

Although MLS's Motion for Extension of Time must be denied as moot, in light of the Court's November 2, 2007, Order substituting Luken for BUC as Plaintiff, that fact does not necessarily dictate that BUC's Motion to Compel and for costs and fees must be granted. Rather, the determination of BUC's Motion to Compel and for costs and fees turns on whether Plaintiff

---

[1] During supplemental briefing, MLS also suggested that Woodbury & Santiago ("W&S"), counsel for Plaintiff, may not be able to appear in this litigation on behalf of Luken. According to MLS, it is not clear that W&S can represent the assignee in the absence of state court approval, and, MLS further postulates, the state court might not approve W&S as counsel for Luken because the firm "may be a creditor of the estate of BUC" and may also have an alleged disqualifying conflict of interest. [D.E. 1350, at 4-5]. This issue is not properly before this Court. Nor does its resolution bear on the determination of whether BUC was within its rights when BUC served discovery in aid of execution on MLS in May, 2007. Accordingly, the Court will not consider it at this time.

could properly serve its Discovery Requests on behalf of BUC, in May, 2007, despite its earlier assignment to Luken of assets for the benefit of creditors. Indeed, if Plaintiff could not properly have served discovery on behalf of BUC upon MLS in May, 2007, the Court cannot consider the merits of BUC's Motion to Compel. But if Plaintiff was within its rights to serve its Discovery Requests on behalf of BUC on MLS in May, 2007, then, for the reasons discussed below, the Court must grant BUC's Motion to Compel.

A.  **BUC's Standing to Conduct Discovery**

MLS's remaining basis for its Motion for Extension of Time boils down to its contention that once BUC made an assignment for the benefit of creditors to Luken in March, 2007, thus transferring, among other interests, BUC's judgment in the pending case, BUC lost standing and with it, the ability to conduct further proceedings in this case in its own name. Rather, MLS argues that any post-assignment efforts on the part of Plaintiff to conduct discovery in aid of execution of judgment had to occur in the name of Luken. Before Luken could conduct discovery, however, MLS asserts that Luken first had to have its interest appear on the record in this case, which did not occur until after Plaintiff filed its Motion to Compel in the name of BUC. Thus, MLS concludes, Plaintiff's Discovery Requests served in May, 2007, in the name of BUC are, effectively, a nullity.

MLS's contention that BUC lost standing to pursue post-judgment proceedings in aid of execution when BUC made assignment of its assets for the benefit of creditors to Luken, has a certain common-sense appeal to it: if BUC gave its interest in the judgment to Luken, then BUC must no longer have any interest in the judgment, and, thus, BUC could not have standing to pursue proceedings in aid of the execution of the judgment. MLS's position, however, does not sufficiently account for the nature of an assignment for the benefit of creditors.

Under Florida law, the intent of the procedure allowing for the assignment for benefit of creditors is "to provide a uniform procedure for the administration of insolvent estates, and to ensure full reporting to creditors and equal distribution of assets according to priorities as established under [Chapter 727, Fla. Stat.]." Fla. Stat. §727.101. While the law requires the assignee, in this case, Luken, to liquidate the estate's assets, collect claims, and pay expenses, Fla. Stat. §727.108, it further demands that the assignor, here, BUC, "assist the assignee in the administration of the estate . . . ." Fla. Stat. § 727.107. Consequently, despite BUC's assignment of the judgment in the pending case to Luken, BUC retained some form of interest in the payment of the judgment, at least until Luken moved for substitution as Plaintiff in this case.

Moreover, even had BUC not retained an interest, Plaintiff still could have properly served discovery in aid of execution on MLS, in the name of BUC, after making assignment for the benefit of creditors to Luken. Rule 25(c), Fed. R. Civ. P., governs the procedure for handling the transfer of an interest any time after an action is brought and the case is pending in district court, including during proceedings to enforce a judgment. *See Explosives Corp. of America v. Garlam Ent. Corp.*, 817 F.2d 894, 907 (1st Cir. 1987); *Panther Pumps & Equip. Co., Inc. v. Hydrocraft, Inc.*, 566 F.2d 8, 23 (7th Cir. 1977). This rule provides, in relevant part,

> In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party. . . .

Rule 25(c) is procedural and does not provide for the survival of a right of action. *Hillbrands v. Far East Trading Co., Inc.*, 509 F.2d 1321, 1322 (9th Cir. 1975). Nevertheless, where a cause of action survives after the transfer of an interest, albeit in the hands of another holder, Rule 25(c) controls the

-8-

manner in which the action proceeds. *Id.*   Thus, "[t]he rule expressly permits parties to continue in an action, even if they do not remain the real party in interest, as long as the cause of action *itself* survives the transfer to the new party." *ELCA Enterprises, Inc. v. Sisco Equip. Rental & Sales, Inc.*, 53 F.3d 186, 191 (8th Cir. 1995) (emphasis in original).

In the instant matter, no one suggests that the right to collect on the judgment entered for BUC did not survive BUC's assignment to Luken for the benefit of creditors.  Nor could anyone. BUC's assignment to Luken did not extinguish the judgment rendered for BUC in the pending case. As a result, Rule 25(c) dictates the parties' options for proceeding after the transfer of interest.  As noted above and in accordance with the plain language of Rule 25(c),[2] in the absence of any court order substituting Luken for BUC as Plaintiff, Plaintiff could properly continue to prosecute the action in the name of BUC, including conducting discovery in aid of execution on behalf of BUC. Because no party had moved for substitution and the Court issued no such order before BUC served its Discovery Requests on MLS, Plaintiff was within its rights to conduct discovery in aid of execution in May, 2007, in the name of BUC, even if BUC no longer retained an interest in the litigation at that point.

---

[2]To the extent that the last sentence of Rule 69(a), Fed. R. Civ. P., may be viewed as relevant to the determination regarding whether Plaintiff could conduct discovery in aid of execution in BUC's name even after the March, 2007, assignment to Luken, the Court can discern no basis for applying Rule 69(a) to BUC's situation any differently than Rule 25(c). Rule 69(a) provides, in relevant part, "In aid of the judgment or execution, the judgment creditor or a successor in interest when that interest appears of record, may obtain discovery from any person, including the judgment debtor, in the manner provided in these rules or in the manner provided by the practice of the state in which the district court is held." Indeed, this aspect of Rule 69(a), though broader than Rule 25(c) in the sense that it allows a successor in interest to conduct discovery in the absence of a court order authorizing substitution (as long as the successor's interest appears of record), appears to envision the same type of procedural mechanism in the context of discovery in aid of execution as Rule 25(c) anticipates at all stages of the litigation once the case is pending.

B. **BUC's Motion to Compel**

As BUC rightly served its Discovery Requests on MLS in May, 2007, it naturally follows that BUC's Motion to Compel must be granted. The record here reflects that MLS never objected to BUC's Discovery Requests. MLS similarly failed to file any motions with the Court excusing their compliance. Nor did MLS respond to BUC's Motion to Compel. MLS's sole action with respect to addressing the existence of BUC's Discovery Requests or its Motion to Compel consisted of untimely filing its Motion for Extension of Time to Respond to BUC's Motion to Compel. Moreover, as explained above, the two reasons asserted by MLS for desiring additional time to respond to BUC's Motion to Compel – a requested (and subsequently, denied) stay of the action pending resolution of the bankruptcy case, and BUC's alleged loss of standing upon assigning its assets to Luken – are legally unsupported and, in any case, do not address the merits of BUC's Discovery Requests. Under these circumstances, where there are no roadblocks to BUC's service of discovery on MLS, MLS has never objected substantively to any of the Discovery Requests, and discovery is well overdue, the Court finds that BUC's Motion to Compel must be granted, and MLS has waived any objections it might have otherwise had to BUC's Discovery Requests. *See Third Party Verification v. SignatureLink, Inc.*, 2007 WL 1288361, *2 (citing *Pulsecard, Inc. v. Discovery Card Servs., Inc.*, 168 F.R.D. 295, 302 (D. Kan. 1996); Rule 33(b)(4), Fed. R. Civ. P.; Rule 34(b), Fed. R. Civ. P.). Accordingly, MLS shall provide complete responses to the Discovery Requests within ten days of the entry of this Order.

C. **BUC's Request for Fees and Costs Incurred in Connection with the Motion to Compel**

Finally, the Court must consider BUC's Request for an award of fees and costs incurred in filing and prosecuting the Motion to Compel. Rule 37(a)(4), Fed. R. Civ. P., requires the Court to

impose sanctions "on the party . . . whose conduct necessitated the motion or the party or attorney advising such conduct or both of them . . . , unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure . . . was substantially justified, or that other circumstances make an award of expenses unjust." *See also* R. 37, Advisory Committee Notes to 1970 Amendment ("The change *requires* that expenses be awarded unless the conduct of the losing party or person is found to have been substantially justified.") (emphasis added).

In this case, the Court finds that BUC made a good-faith effort to obtain responses to the Discovery Requests without Court intervention. First, BUC agreed to respond the response time by thirty days because Mr. Conwell advised BUC that MLS's corporate representative would be traveling abroad. Upon the expiration of that extension of time, BUC agreed to a second extension of time for MLS to respond to the Discovery Requests – this time for five days, because Mr. Conwell told BUC that the attorney handling the MLS matter had been out of town for the past week. Then, when Mr. Conwell finally advised BUC that he did not know whether CSK was representing MLS, BUC agreed to another extension of time until August 13, 2007 – a total extension of time to respond of 44 days. When MLS failed to respond on August 13, BUC attempted to call CSK to learn why MLS had not responded, but no one on behalf of MLS returned BUC's calls. Under these circumstances, MLS left BUC with no choice but to file its Motion to Compel.

As for whether MLS's non-compliance was substantially justified, "discovery conduct should be found 'substantially justified' under Rule 37 if it is a response to a 'genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action. *Devaney v. Continental American Ins. Corp.*, 989 F.2d 1154, 1163 (11th Cir. 1993) (quoting *Pierce v.*

*Underwood*, 487 U.S. 552, 565, (1988) (citations omitted)). While the Court finds that the standing argument raised by MLS in its Motion for Extension of Time may well have satisfied the "substantially justified" standard had it been timely raised in a motion for protective order or other appropriate vehicle, the fact remains that MLS did not make its standing argument until after the time and multiple extensions had lapsed for MLS to respond to BUC's Discovery Requests, and MLS had exhausted the time to respond to BUC's Motion to Compel. Indeed, by MLS's own admission, MLS was not even aware of the facts underlying its arguments in its Motion for Extension of Time until *after* MLS had failed to respond to BUC's Discovery Requests.

Rather, at the time MLS's responses were due, MLS explained only that it did not comply because of apparent confusion surrounding which attorney was representing MLS. According to Mr. Conwell, although Mr. Conwell and CSK were listed as the attorney of record for MLS in this proceeding as early as April, 2006, Mr. Conwell viewed himself as appellate counsel only when he received BUC's Discovery Requests in May, 2007. Mr. Conwell explained that MLS did not actually retain CSK to handle post-judgment proceedings until after BUC filed its Motion to Compel. While the Court can appreciate the difficulties surrounding Mr. Conwell's position, Mr. Conwell did not give BUC the benefit of Mr. Conwell's knowledge regarding his lack of retention until BUC declined to agree to the full ten-day length of the second requested extension of time to respond to the Discovery Requests. Moreover, although Mr. Conwell did not view CSK as having been retained to handle post-judgment proceedings when MLS's Discovery Responses were due, Mr. Conwell, who remained designated as counsel of record in the court file during the applicable time frame, never filed a motion to withdraw as counsel. Under these circumstances, CSK should have filed some type of response to the Discovery Requests on behalf of MLS.

As for MLS, the need to employ counsel to handle post-judgment proceedings did not spring up on MLS without warning. MLS has been involved as a litigant in this case since 2002, and, as discussed above, CSK has represented MLS since at least April, 2006. Furthermore, ultimately, MLS continued to employ CSK to represent it in the post-judgment proceedings. MLS's failure to timely advise CSK that it expected CSK to represent MLS during the post-judgment district court proceedings left CSK facing a Hobson's choice. In this situation, the Court cannot find that MLS was "substantially justified" in not responding to BUC's Discovery Requests or that circumstances make an award of fees and costs unjust.

Because Rule 37 demands the imposition of costs and fees, the Court must consider the proper apportionment of these costs and fees between MLS and CSK. *Devaney v. Continental Amer. Ins. Co.*, 989 F.2d 1154, 1160-63 (11th Cir. 1993). For the reasons discussed above, the Court finds that both MLS and CSK played an equal role in MLS's failure to respond timely to BUC's Discovery Requests, without substantial justification. Therefore, the Court finds that MLS and CSK shall equally bear the costs and fees awarded to BUC.

### III. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that:

1. BUC's Motion to Compel [D.E. 1314] is **GRANTED**. MLS shall deliver responses to BUC's Discovery Requests by **5:00 p.m., within 10 days** of the entry of this Order. **Within 30 days,** BUC shall file an affidavit regarding fees and costs incurred in connection with the filing of and prosecution of BUC's Motion to Compel. MLS shall have **10 days** from the filing of BUC's affidavit to file objections to the fees and costs sought.

2. MLS's Motion for Extension of Time [D.E. 1325] is **DENIED**.

**DONE AND ORDERED** this 12th day of November, 2007, in Fort Lauderdale, Florida.

_____
ROBIN S. ROSENBAUM
UNITED STATES MAGISTRATE JUDGE

cc: The Honorable William P. Dimitrouleas
    Counsel of Record