# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 02-60772-CV-DIMITROULEAS/ROSENBAUM

THOMAS A. LUKEN, as Assignee for
BUC INTERNATIONAL CORP.,

        Plaintiff,

v.

INTERNATIONAL YACHT COUNCIL,
LIMITED, BARBARA TIERNEY, MLS
SOLUTIONS, INC., WILLIAM PAZOS,
FLORIDA YACHT BROKERS
ASSOCIATION, INC., and BRADFORD
YACHT SALES, INC.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter comes before the Court on Plaintiff's Motion for Attorneys' Fees and Costs ("Motion for Specified Amount of Attorneys' Fees and Costs") [D.E.1467] pursuant to the Honorable William P. Dimitrouleas's Order dated September 24, 2008 [D.E. 1458], affirming the finding of Plaintiff's entitlement to certain attorney's fees and costs, as set forth in the September 8, 2008, Report and Recommendation [D.E. 1451].  Judge Dimitrouleas referred Plaintiff's Motion for Specified Amount of Attorneys' Fees and Costs to me on November 26, 2008, for appropriate disposition or report and recommendation.  *See* D.E. 1468.

On January 14, 2009, I issued a Report and Recommendation regarding Plaintiff's Motion for Specified Amount of Costs. *See* D.E. 1481. As a result, this Report and Recommendation will address only Plaintiff's Motion for Specified Amount of Attorneys' Fees. After reviewing the Motion for Specified Amount of Attorneys' Fees, all responsive and opposing filings and briefs and the record, I recommend granting in part and denying in part Plaintiff's Motion for Specified Amount of Attorneys' Fees.

## I. Background[1]

BUC brought this action to recover damages, among other remedies, stemming from Defendants' alleged copyright infringement of BUC's protected Yacht Listing. *See* D.E. 1. Following a jury trial, the Court entered judgment for BUC[2] in the amount of $1,598,278.00, plus interest, against Defendants MLS and International Yacht Council Limited ("IYC"). *See* D.E. 1137. The Eleventh Circuit affirmed the judgment. *See* D.E. 1333.

Although Luken filed his Verified Motion for Attorney's Fees and Costs on April 7, 2008, *see* D.E. 1406, Luken filed an affidavit in support of his verified motion for attorney's fees three months earlier, on January 8, 2008. *See* D.E. 1387. This January 8th filing included an affidavit by Grafton N. Carlson, dated January 7, 2008, Plaintiff's expert on fees [*see* D.E. 1387-2]. After Luken filed his affidavit and the Carlson affidavit, but before Luken filed his Verified Motion for

---

[1] For a fuller background regarding the facts of this case, see Section I of the September 8, 2008, Report and Recommendation [D.E. 1451].

[2] BUC originally brought and litigated this action. On November 2, 2007 [D.E. 1361], however, Thomas A. Luken, as assignee for BUC, took over the litigation on BUC's behalf. For the sake of clarity, throughout the remainder of this Report and Recommendation, the Court shall refer to Luken as Plaintiff, regardless of whether Luken had taken on that role at the time of the event in question.

Attorney's Fees, on February 22, 2008, Luken filed an appendix containing copies of billing records evidencing hourly time entries on behalf of Plaintiff, retainer agreements, correspondence with Plaintiff's various attorneys, proof of payment of legal bills, and other related documents.  *See* D.E. 1395].  Luken's Verified Motion for Attorney's Fees and Costs, filed, as noted previously, on April 7, 2008, sought attorney's fees incurred in the district court litigation and the appellate court litigation through the end of the first *BUC* appeal ("*BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 489 F.3d 1129, 1135 (11th Cir. 2007) ("*First BUC Appeal*"). *See* D.E. 1406.  Judge Dimitrouleas referred Plaintiff's Verified Motion for Attorney's Fees and Costs to me for report and recommendation or other appropriate disposition.  [D.E.1388].  After numerous extensions,[3]  the motion was fully briefed by all parties and oral argument was held on September 3, 2008.

On September 8, 2008, I issued a Report and Recommendation ("September 8, 2008, Report") on Plaintiff's Verified Motion for Attorney's Fees and Costs, recommending that it be granted in part and denied in part. [D.E. 1451].  Specifically, the September 8, 2008, Report recommended,

1. An award of attorney's fees incurred in the district court should be denied, except to the extent that BUC incurred more than *de minimis* fees in the District Court in addressing the issues discussed in Section II.B.1.B. of this Report and Recommendation, for which an award of reasonable attorney's fees should be granted;

2. With respect to attorney's fees expended in defending against Defendants' arguments identified in Section II.B.1.B of this Report and Recommendation during the *First BUC Appeal*, an award of reasonable attorney's fees should be granted; []

_____

[3]  See *infra* at footnote 12.

3

     3.      Within 30 days of the Court's entry of its Order regarding this Report and Recommendation, BUC should submit an itemized list[] of all records supporting reasonable attorney's fees paid in defending against Defendants' arguments identified in Section II.B.1.B of this Report and Recommendation at the District Court and during the *First BUC Appeal*;

     4.      All other attorney's fees should be denied . . . .

*Id.*, at 31-32.  In other words, "BUC should receive an award of fees incurred as a result of defending against *the particular issues* noted in Section II.B.1.B. of [the] Report and Recommendation."  *Id.*, at 30 (emphasis added).  In this regard, the Report directed that these fees must be "quantifiable [and] reasonable . . . ."  *Id.*  Further, the Report instructed,

> . . . BUC must itemize all attorney's fees expended in connection with combating these particular issues both in the District Court and in the Eleventh Circuit and submit such itemization and billing records to the Court and Defendants for review and consideration.

*Id.*

Section II.B.1.B. of the September 8, 2008, Report set forth the following arguments by Defendants for which Plaintiff could seek fees for defending against at both the District Court and on the first appeal to the Eleventh Circuit Court of Appeals: (a) Defendants' objections to the introduction of BUC's evidence regarding actual damages (more specifically, an expert accountant's damages calculation report), based on grounds that it lacked foundation, was cumulative, and constituted hearsay; (b) Defendants' objections to the testimony of the accountant because Defendants argued his testimony fell beyond the scope of his expertise; (c) Defendants' objections to the Court's copyright instruction to the jury regarding the "substantial similarity" standard; and (d) Defendants' argument at the *First BUC Appeal* that the Court abused its discretion in charging

4

the jury on statutory damages.  D.E. 1451 at 22-26.  Thus, the September 8, 2008, Report granted

Plaintiff the limited right to tax fees against Defendants incurred in defending against these *specific*

*issues* addressed at Section II.B.1.B. of this Report and Recommendation.  *Id.*, at 30-32.  On

September 24, 2008, Judge Dimitrouleas adopted the September 8, 2008, Report affirming the award

of specific fees and costs to Plaintiff.  *See* D.E. 1458.

   In accordance with the September 8, 2008, Report and the September 24, 2008, Order, on

November 24, 2008, Plaintiff filed the Motion pending before the Court, Plaintiff's Motion for

Specified Amount of Attorneys' Fees and Costs. [D.E.1467].  In his Motion, as it relates to

attorney's fees, Plaintiff states that Plaintiff and his expert, Mr. Grafton Carlson, Esq., have

examined the extensive billing records and concluded that it is reasonable to tax Defendants between

$20,300 and $23,050 in legal fees, for trial and appellate work regarding the issue of jury instructions

and for  trial work regarding expert damages report.  *Id.*, at 1.  Plaintiff represents that in compliance

with the September 8, 2008, Report, Plaintiff seeks legal fees for the legal work involved in two

issues, the admission into evidence of Plaintiff's damages model and the jury instructions.  *Id.*

   In support of his Motion, Plaintiff also submits the affidavit of Grafton N. Carlson dated

November 24, 2008. [D.E. 1467-2].  Mr. Carlson states in his November 24th affidavit that although

a total of 166.23 hours were expended concerning jury instructions, this number of hours should be

reduced because it includes time expended on all jury instructions – not just those for which the

Court granted fees in the September 8, 2008, Report. *Id.*, ¶ 1.  In this respect, Mr. Carlson opines that

34 hours (of the total 166.23 hours) amounts to a reasonable expenditure of hours on the jury

instructions for which the Court awarded damages, at a reasonable hourly rate of $350, for a total

of $11,900, and refers to Exhibit A.[4]  *Id.*  Next, Mr. Carlson states that legal work attributed to the

appeal for the jury instructions issue totals between $2,750 and $5,500, which Mr. Carlson represents

is between 5% and 10% of the amount paid to Phillip P. Parish, Esq., to represent Plaintiff on appeal.

*Id.*; *see also* D.E. 1490.  Regarding the legal hours attributed to the expert damages report, Mr.

Carlson concludes that there were a total of 31 such hours and refers to Exhibit B.  *Id.*, ¶ 2.  Mr.

Carlson opines that it is reasonable to tax Defendants for only 19 hours (of the 31 total hours) for

the expert damages report issue, at an hourly rate of $350, for a total of $6,650.  *Id.*  In sum, Mr.

Carlson states that it is his opinion that between $20,300 and $23,050 is an appropriate and

reasonable amount to tax Defendants for the two recoverable issues allowed by the Court in the

September 8, 2008, Report.  *Id.*, ¶ 3.

Defendants filed their Opposition on December 9, 2008.  [D.E. 1472].  In their Opposition,

Defendants argue that Plaintiff's Motion for Specified Amount of Attorneys' Fees and Costs, as it

relates to fees, failed to comply with the September 8, 2008, Report by not providing a specifically

itemized list of legal fees, and with the requirements  set forth in Local Rules 7.3(A)[5] and (C),[6]

---

[4] On December 2, 2008, Plaintiff submitted Exhibits A and B to Mr. Carlson's November 24th affidavit, which are two separate lists that appear to reflect time entries from billing records.  [D.E. 1470].

[5] Local Rule 7.3(A), S.D. Fla., states that,

> Any motion for attorneys fees and/or cost: (i) must specify the judgment and the statute, rule, or other grounds entitling the moving party to the award; (ii) must state the amount or provide a fiar estimate of the amount sought; (iii) shall disclose the terms of any agreement with respect to fees to be paid for the services for which the claim is made; (iv) describe in detail te number of hours reasonably expended, the bases for those hours, the hourly rate(s) charged, and identity of the timekeeper(s); (v) shall describe in detail

S.D.Fla., for a motion for attorney's fees.  *Id.*, at 1-3.  Due to these failures, Defendants assert,

taxable legal fees are presently both unascertainable and unverifiable by Defendants and the Court.

*Id.*  Further, Defendants state that they have incurred considerable fees and costs associated with

Plaintiff's repeated failures to comply with the Court's Orders regarding Plaintiff's requests for

attorney's fees and costs.  *Id.*, at 6.  Defendants contend that Plaintiff's Motion should be denied in

its entirety.  *Id.*, at 1, 6.

Plaintiff filed a Response to Defendant's Opposition on December 22, 2008. [D.E. 1475].

---

all reimbursable expenses; (vi) shall be verified; (vii) shall be supported by an affidavit of an expert witness; and (viii) shall be filed and served within thirty days of entry of a Final Judgement or other appealable order that gives rise to a right to attorneys fees and/or costs.  Any such motion shall be accompanied by certification that counsel has fully reviewed the time records and support date and that the motion is well- grounded in fact and justified.  Prior to filing a motion for attorney's fees and/or costs, counsel shall confer with opposing counsel and make a certified statement in the motion in accordance with Local Rule 7.1.A.3.  The motion shall also state whether a hearing is requested.

*Id.*

[6] Local Rule 7.3(C), S.D.Fla, states that,

A bill of costs pursuant to Title 28, United States Code, Section § 1920 shall be filed and served within thirty days of entry of Final Judgment or other appealable order which gives rise to a right to tax costs . . . .  An application for a bill of costs must be submitted in form A0133 of the Administrative Office of the United States Courts the bill of costs should attach copies of any document showing the amount of costs.

*Id.*

On January 13, 2009, the Court issued an Order Directing Plaintiff's Response. [D.E. 1480].

In the Order, the Court instructed Plaintiff to provide the following information by January 20, 2009,

in support of its Motion for Specified Amount of Attorneys' Fees:

     a.    The full names, firm name, number of years in practice, and expertise level of each attorney for whom Plaintiff seeks attorney's fees;

     b.    The hourly rates for each attorney for whom Plaintiff seeks attorney's fees;

     c.    Any agreements between Plaintiff and counsel for Plaintiff that sets forth the hourly rates for each attorney for whom Plaintiff seeks attorney's fees;

6

     d.    A statement as to whether each attorney for whom Plaintiff seeks attorney's fees represented Plaintiff at the trial level or appellate level;

     e.    An affidavit from Plaintiff's expert witness regarding attorney's fees that sets forth the background and expertise of the expert witness, and the basis for the expert witness's opinion regarding the reasonableness of the amount Plaintiff seeks in attorney's fees; and

     f.    A certification by Plaintiff's counsel that counsel has fully reviewed the time records and supporting data, and that Plaintiff's Motion for Motion for Specific Attorneys' Fees is well-grounded in fact and justified.

[D.E. 1480, at 2-3].   The Order also warned,

if Plaintiff fails to provide the requested information, the Court will assume that the work was performed by newer associates and will set a reasonable hourly rate, accordingly, at $150.00.  The Court will further make a determination regarding the reasonable hours expended based on the district court record, which, of course, has very little information enlightening the Court as to how Plaintiff expended money on appeal.

*Id.*, at 3-4.  Plaintiff was directed to respond by January 20, 2009. *Id.*, at 2.

On January 20, 2009, Plaintiff moved for a fourteen-day extension of time for Plaintiff to respond to the January 13, 2009, Order [D.E. 1482], to which the Defendants objected on January 23, 2009  [D.E. 1487].  That same day, Plaintiff amended his motion for a fourteen-day extension. [D.E. 1486].  On January 26, 2009, the Court granted Plaintiff a fourteen-day extension, which made Plaintiff's response due by February 3, 2009. [D.E. 1488].  Based on the protracted history of the attorney's fee issue in this case, attributable in no small part to Plaintiff's piecemeal filing approach and repeated requests for extensions of time, the Court expressly cautioned Plaintiff,

> [I]n view of the prior extensions, some of which were necessitated by Plaintiff's failure to comply with the Local Rules or this Court's previous Orders, the Court does not anticipate granting any further extensions or opportunities for Plaintiff to support his application for attorney's fees, barring extenuating circumstances.

*Id.*, at 2.

Plaintiff filed his Response to Court's Order of January 13, 2009, on February 3, 2009. [D.E. 1490].  Plaintiff's Response stated that Philip P. Parrish, Esq., represented Plaintiff on appeal regarding issues of jury instructions and the expert damages report, and asserted a reasonable fee amount for Mr. Parrish's work regarding these two issues was $20,040.00  *Id.*, ¶ 1.  Additionally, Plaintiff asserted that he would be filing additional information on February 9, 2009.  *Id.*, ¶ 2.

Plaintiff also attached an affidavit and resume of Mr. Parrish to Plaintiff's Response.  [D.E. 1490-2, 1490-3, 1490-4].  In his affidavit, Mr. Parrish stated that he represented Plaintiff on appeal and kept time records to a tenth of an hour regarding his work.  D.E. 1490, ¶ ¶ 2-3.  Further, he asserted that he expended a *total* of 132.7 hours on Plaintiff's appeal, at an hourly rate of $300.  *Id.,* ¶ ¶ 4-5.  According to the affidavit, two of the four issues raised on appeal – the jury instructions

issue and expert damages report – are reimbursable under the Court's fee entitlement order.  *Id.*, ¶ 6.  Mr. Parrish concludes that the time he allocated to these two issues only on behalf of Plaintiff totaled 66.8 hours, and that based on a rate of $300, his total fees for these two issues amounted to $20,040.00.  *Id.*, ¶ 7.

Based on Mr. Parrish's February 3, 2009, affidavit in conjunction with Mr. Carlson's November 28, 2008, affidavit, it appears that Plaintiff revised  the total amount of legal fees he is seeking in his Motion for Specified Amount of Attorneys' Fees.  Originally, Plaintiff *only* sought legal fees relating to trial work regarding both the issues of the jury instructions and the expert damages report, and appellate work regarding the recoverable portion of *jury instructions*, as set forth in Mr. Carlson's November 28th affidavit, but *not* for appellate work relating to the recoverable *expert damages report* issue.  However, with the submission of Mr. Parrish's affidavit, now Plaintiff additionally seeks fees for the *appellate work regarding the expert damages report issues*, along with the other legal fees requested.  As a result, it now appears that Plaintiff is seeking legal fees for the 54 hours of trial work regarding the recoverable jury instructions issue (34 hours) and recoverable expert damages report issue (19 hours) at an hourly rate of $350, for a *subtotal* of $18,550 ( 53 hours (34 hours +19 hours = 53 total hours) x $350) [*see* D.E. 1467-2, ¶ ¶ 1-2], and legal fees for 66.8 hours of appellate work regarding the recoverable jury instructions and recoverable expert damages report issue at an hourly rate of $300, for a *subtotal* of $20,040 (66.8 hours x $300).  Thus, as of February 3, 2009, adding the subtotals for both trial and appellate work together ($18,550 +

$20,040), Plaintiff now seeks a *revised total* of *$38,590* in legal fees in his Motion for Specified Amount of Attorneys' Fees.[7]

On February 5, 2009, in response to Plaintiff's statement in his February 3, 2009, filing that he expected to file additional materials on February 9, 2009, the Court directed Plaintiff not to file any further information in support of Plaintiff's Motion. [D.E. 1491]. As the Court explained, it specifically advised Plaintiff in its January 26, 2009, Order granting Plaintiff's most recent fourteen-day extension of time, that barring extenuating circumstances, the Court did not anticipate granting any additional extensions of time. *Id.* Because Plaintiff identified no reason why it required more time to make its filings, the Court could not find that Plaintiff had presented extenuating circumstances warranting an additional filing extension, and, thus, instructed Plaintiff to cease filing information in support of his Motion. *Id.*

Though not directed by the Court, on February 11, 2009, Defendants filed a Reply in Opposition to Plaintiff's Response to Court's Order of January 13, 2009. [D.E. 1492]. Defendants' Reply contends that Plaintiff failed to provide the Court with itemized bills of fees attributable to all taxable issues at the trial level. *Id.*, ¶¶ 10, 16, 17, 18. Similarly, Defendants argue that Plaintiff's Motion failed to provide itemized bills regarding Mr. Parrish's time spent regarding taxable issues related to the appeal in contravention of the September 8th Report. *Id.*, ¶¶ 10, 1115, 18, 19, 20.

In addition, Defendants argue that Mr. Carlson's November 24, 2008, affidavit is deficient. [D.E. 1492]. Defendants indicate that Mr. Carlson's affidavit fails to address why any hourly rate of $300.00 for Mr. Parrish's appeal work is reasonable. *Id.*, ¶ 21. Defendants further complain that

---

[7] Based on Plaintiff's original request of $20,300 to $23,050 in legal fees [*see* D.E. 1467-2, ¶3], this revision adds about $18,290 to $15,540 more to his fee request.

11

the affidavit fails to explain why of the total 166.23 hours of billing entries included in Exhibit A regarding the jury instructions issue, 34 hours are recoverable. *Id.*, ¶ 17.  Regarding Exhibit B, which lists the entries of time for which Plaintiff seeks fees regarding the issue of the expert damages report, Defendants object that neither Mr. Carlson nor Plaintiff has explained why certain entries are underlined and others are not underlined as it pertains to Plaintiff's Motion.  *Id.*  Defendants also argue that Mr. Carlson's November 24, 2008, affidavit lacks any expert analysis of the legal fees regarding the expert damages report issue raised on appeal, although it includes an opinion regarding Mr. Parrish's time on appeal pertaining to the jury instructions issue. *Id.*, ¶ ¶ 9, 20.

Defendants further insist that Plaintiff's information regarding the fees for the appeal of *the jury instructions issue* is conflicting.  [D.E. 1492, ¶ 19].   While Mr. Parrish's Affidavit states that he worked a *total* of 132.7 hours on Plaintiff's appeal for an hourly rate of $300 [*see* D.E. 1490-2,¶ ¶ 4, 6], which amounts to $39,810 spent on fees for the entire appeal (132.7 hours x $300 an hour = $39,810), Defendants note that Mr. Carlson's January 7, 2008, and November 24, 2008, affidavits affirm that Mr. Parrish was paid a fee of $55,000 for the appeal [*see* D.E. 1467-2, ¶ 1; 1387-2, ¶ 3.D.].   Taking these assertions in conjunction, along with Mr. Carlson's opinion that Mr. Parrish be awarded between 5% to 10% "of the amount paid to . . . Mr. Parrish for the [a]ppeal"[*see* D.E. 1467-2, ¶ 1], regarding the jury instructions issue, Defendants argue that Plaintiff is entitled to only between $1,990.50 and $3,981 (5% to 10% of the total dollar amount spent on fees, which is $39,810, according to Mr. Parrish's affidavit) for work related to the jury instructions issue on appeal, and not between $2,750 and $5,500 (which is 5% to 10% of $55,000 paid in fees), as asserted by Mr. Carlson's November 24, 2008, affidavit.  *See* D.E.1467-2, ¶ 1.

Furthermore, Defendants assert that Plaintiff has failed to comply with the Court's January 13, 2009, Order, by not providing detail regarding his attorneys' experience levels or hourly rates, any agreement pertaining to such rates, a statement as to whether each attorney for whom Plaintiff seeks fees represented Plaintiff at the trial or appellate level, or certification by Plaintiff's counsel that he has fully reviewed the time records and support data, and that Plaintiff's Motion is well-grounded in fact and justified. D.E. 1492, ¶ ¶ 16, 17, 18, 20, 24.  Defendants add that they have incurred considerable fees and costs associated with Plaintiff's repeated failures to comply with the Court's Orders regarding Plaintiff's requests for attorneys fees and costs.  *Id.*, ¶ 22.

Finally, Defendants argue that because Plaintiff has failed to provide adequate support for his Motion, repeatedly neglected to comply with the Court's Orders regarding attorney's fees, and caused Defendants prejudice in the form of Defendants' expenditure of unnecessary fees and costs, Plaintiff's Motion should be denied. [D.E. 1492, ¶24].  In the alternative, Defendants request that an award of fees to Plaintiff related to trial work be limited to $150.00 per hour for all of the recoverable requested hours by Plaintiff.  More specifically, as it relates to trial work, Defendants request an award of $7,950 for 53 hours ((34 hours for jury instructions issue +19 hours for expert damages report issues = 53 total  hours) x $150.00 hourly rate), and as it regards appellate work, Defendants recommend an award of either $10,020.00 (66.8 hours of time x $150.00 hourly rate), or between $1,990.50 and $3,981, which is 5% to 10% of  $39,810, *i.e.*, the total fees spent for Mr. Parrish's work.  *Id.*, ¶ 25.

Plaintiff's Motion is now fully briefed and ripe for recommendation.

*II. Analysis*

A.    **Attorneys' Fees**

1.    **Entitlement to Attorneys' Fees**

As noted above, the Court granted Plaintiff the right to recover quantifiable and reasonable fees incurred as a result of defending against the particular issues noted in Section II.B.1.B. of the Report and Recommendation. *See* D.E. 1451. To enable the Court to make such an award, the Court directed Plaintiff to provide to the Court an itemized list and billing records of all attorney's fees expended relating to the compensable issues. *Id.*

In his Motion, Plaintiff characterizes the granting of fees in the Court's September 8, 2008, Report as relating to "the extent of legal work involved in two issues: (1) the admission into evidence of Plaintiff's Damages Model prepared by the accounting firm of Rachlin, Cohen, Holtz, PCA[] and (2) Jury instructions." [D.E. 1467, at 1].  Defendants have not objected to the characterization of the recoverable issues in this manner.  Thus, Plaintiff is entitled to fees relating to these issues if he can establish that the hours claimed were reasonably expended in furtherance of these two recoverable issues.

The Court begins with Plaintiff's proffer of Mr. Grafton N. Carlson, as his expert on attorney's fees, in support of Plaintiff's Motion for Specified Amount of Attorney's Fees and Costs. In Plaintiff's original verified motion for attorney's fees, Plaintiff represented that Mr. Carlson was a lawyer with thirty years of trial experience and that he was admitted to the bar of the United States District Court, Southern District of Florida. D.E. 1406.  Mr. Carlson affirmed in his affidavit dated January 7, 2008, in support of Plaintiff's original verified motion for attorney's fees, that he is a

14

Florida-licensed attorney, admitted to practice in the Southern District of Florida. D.E. 1387-2, ¶ 1. Mr. Carlson further averred that he has tried many jury trials in the past thirty years and is knowledgeable of the rates charged by attorneys in the Miami-Fort Lauderdale area, where he has practiced his entire career. *Id.* At the time, as all legal fees and costs were at issue for Plaintiff's original verified motion for attorney's fees, Mr. Carlson stated he reviewed all of the extensive billing records in this case as a basis for his opinion regarding fees. *Id.*, ¶ 2.

In his Motion for Specified Amount of Attorney's Fees and Costs, before the Court today, Plaintiff offered Mr. Carlson's opinion regarding recoverable fees pursuant to the Court's September 8, 2008, Report, and stated that Mr. Carlson examined the billing records as a basis for his conclusion regarding the amount of attorney's fees sought by Plaintiff, as set forth in his November 24, 2008, affidavit. D.E. 1467, at 1.

While Defendants have been critical of Plaintiff's pending Motion and as well as of Mr. Carlson's affidavits, Defendants have not objected specifically to Mr. Carlson's expertise or Plaintiff's proffer of Mr. Carlson as a fee expert. D.E. 1472, 1492; *see also* 1397, 1400, 1405, 1413, 1424, 1425, 1446, 1447. After review of Mr. Carlson's attestation to his skills and knowledge regarding fees, as well Defendants' lack of objection, the Court finds that it will accept Mr. Carlson as a fee expert for Plaintiff. The Court, notes, however, that while it accepts Mr. Carlson as Plaintiff's fee expert, the Court must still scrutinize Mr. Carlson's affidavits regarding the evidence submitted to support his opinions and conclusions regarding Plaintiff's Motion.

### a.    *Legal Fees for Hours Attributed to Trial Level Work*

Now, turning to the specific amount of recoverable legal fees attributable to trial level work, according to Plaintiff's Motion, the November 24, 2008, affidavit of Grafton N. Carlson states that Plaintiff seeks fees from "[t]he identifiable hours attributed to the expert [d]amage [r]eport . . . ," but only seeks 19 hours of the total 31 hours attributable to the expert damages report issue. [D.E. 1467-2, ¶ 2].  In support of his opinion, Mr. Carlson relies upon Exhibit B to his affidavit, which appears to be a list of time entries regarding the expert damages report issue from billing records from the district court proceedings.  [D.E, 1470 at 3-4].  This two-page list of time entries does not have any column titles, but each entry appears to include billing time, an attorney's name, the law firm's name, hours expended, date, and description of the work.   *Id.*   Certain entries of Exhibit B are identified with a handwritten asterisk ("*"), and it appears that these entries add up to the total hours Plaintiff asserts were performed on the issue of the expert damages report (31 hours), of which he seeks to recover only a portion from Defendants (19 hours).  *Id.*   The descriptions in these four entries with an asterisk include, "Barry Mukamel direct testimony," "redirect exam of Barry Mukamel," "prep of Barry Mukamel for direct expert testimony," and "rev Barry Mukamel expert report."  *Id.*

Regarding the "jury instructions," the November 24th affidavit of Mr. Carlson supports fees at the district court level for "total hours of 166.23 concerning the jury instructions matter . . .  [as] reduced by work reasonably related to other counts that went to the jury . . .," thus,  seeking only 34 hours of the total 166.23 hours attributable to the jury instructions matter.  D.E. 1467-2, ¶ 1.  To support his opinion, Mr. Carlson relies upon Exhibit A to his affidavit, which appears to be a list of

time entries from billing records, including column titles of "Hrs," "Description reasons," date, attorney "Name," initials or "Int," and firm, and also includes a handwritten notation of "Total Hours: 166.23." D.E. 1470, at 2. While some of the entries in Exhibit A are marked out by handwritten lines, the entries that remain include descriptions of work under the column "description reasons," such as "began working on jury instructions," "continued drafting jury instructions," "Drafted verdict form," "prep motion re jury instructions," and "research regarding erroneous jury [instructions]." *Id.* It appears that the non-marked out entries are intended to add up to the total hours Plaintiff contends were performed on the jury instruction matters (176.23  hours[8] ), of which Plaintiff seeks to recover only a portion from Defendants (34 hours). [D.E. 1467-2, ¶ 1].

Defendant objects that Plaintiff failed to comply with September 8, 2008, Report by not providing "an itemized list of all records supporting reasonable fees paid," for trial court work [D.E. 1472, at 1-2; 1492, ¶ ¶ 10, 16, 17]. Specifically, Defendants assert that Exhibits A and B of Mr. Carlson's November 24, 2008, affidavit do not adequately itemize how or why Mr. Carlson came to the conclusion of the amount of recoverable hours attributable to both issues at the trial level. [D.E. 1492, ¶ 10, 17]. As such, Defendants argue that the taxable legal fees are presently both unascertainable and unverifiable. *Id.* Defendants further argue that Plaintiff has failed to comply with the Court's Orders to provide adequate support regarding his Motion. *Id.*, ¶ 16, 17, 18, 20, 24. Thus, according to Defendants, Plaintiff's request for fees at the trial level should be denied. *Id.*

---

[8]  The Court has calculated and recalculated all the entries that are not marked out and listed in Exhibit A regarding jury instructions, and finds that they total 176.23 hours, not 166.23 as indicated in handwriting on the bottom of Exhibit A, and as stated by Mr. Carlson in his November 24, 2008, affidavit.  As a result, the Court will use 176.33 as the corrected number of total hours listed in Exhibit A for the jury instructions matter.

Regarding fees attributed to the expert damages report issue, from the Court's review of the case file, it has determined that Barry Mukamel was Plaintiff's expert witness at trial regarding damages, consistent with description of work in Exhibit B.  *See* D.E. 336.  The Court has also considered the content of the entries of Exhibit B to Mr. Carlson's November 24, 2008, affidavit regarding the total number of hours attributed to the damages expert issue by Plaintiff,[9] and Mr. Carlson's statement attesting to the hours performed by Plaintiff at the trial regarding this issue. D.E. 1470, at 3-4.  Additionally, the Court has examined the copies of the billing records submitted in the appendix in support of Plaintiff's original verified motion for attorney's fees [*see* D.E.1387, 1406] and verified the general content of the entries as listed in Exhibit B.  [D.E. 1395-3, at 55, 58].

In its review of the record, the Court was able to determine that the legal work performed for which Plaintiff seeks fees related to the recoverable issue of the expert damages report.  Although Plaintiff did not provide specific entries to support the 19 hours he seeks to recover, the Court finds the general content of the 34 hours of the entries listed in Exhibit B, verified by the billing records and attested to by Mr. Carlson in his November 24th affidavit, sufficient to establish that these hours relate to the smaller recoverable portion of the expert damages report issue.  Accordingly, the Court concludes that Plaintiff has met the burden of itemizing the hours for which he seeks fees at the trial level regarding the expert damages report issue, for at least the entitlement to fees.

The Court has also reviewed the record in order to determine whether Plaintiff is entitled to trial level fees regarding the jury instructions issue.   In this regard, the Court has examined the list

---

[9]  The Court notes that certain entries of Exhibit B are underlined, but believes these lines separate groups of entries by date and do not signify entries that relate to Plaintiff's request for fees.

of time record entries from billing records of Exhibit A of Mr. Carlson's November 24, 2008, affidavit regarding the total hours attributed to the jury instructions issue, and Mr. Carlson's statement attesting to the hours performed by Plaintiff at the trial.  [D.E. 1470, at 3-4].  The Court has also analyzed the copies of billing record entries submitted in the appendix in support of Plaintiff's verified motion for attorney's fees [*see* D.E.1387, 1406] to check the scope of the content of the entries as compared to Exhibit A.  [D.E. 1395-3, at 1395-2, at 4, 5, 7, 38, 49-54, 58, 64-65, 68].

Based on a review of the record, the Court concludes from the descriptions set forth in the specific billing entries that these attorney hours were generally attributable to the compensable jury instructions issue at trial.  Again, the Court notes that while Plaintiff did not identify the specific entries from Exhibit A regarding the 34 hours for which he seeks to recover, the Court finds the general content of the all the 176.23 hours listed in Exhibit A, verified by the original billing regards, along with the attestation of Mr. Carlson that 34 hours relate to the recoverable issue, provide sufficient and satisfactory support for the Court's conclusion.  Thus, the Court holds that Plaintiff has met the burden of itemizing the hours for which he seeks fees for regarding the jury instructions issue at the trial level.

> b.    *Legal Fees for Hours Attributed to First Appeal to the Eleventh Circuit Court of Appeals*

In Plaintiff's Motion, Mr. Carlson asserts in his November 24, 2008, affidavit that Plaintiff seeks "work attributed to the appeal paid [to] attorney Parrish . . . for . . . [the recoverable] jury instruction[s] issue."  *Id.*  In Plaintiff's Response to the Court's Order of January 13, 2009, Plaintiff also submits that on the first appeal to the Eleventh Circuit Court of Appeals, Mr. Parrish represented

Plaintiff regarding the issues of jury instructions and the expert damages report. D.E. 1490. In Mr. Parrish's affidavit, Mr. Parrish asserts that he kept time records regarding his work on appeal for Plaintiff, provides a total number of hours for all issues worked on appeal, and confirms that he worked on both the expert damages report and the jury instructions issues. D.E. 1490-2, ¶¶ 2, 4, 6. Mr. Parrish further provides a total number of hours that he worked on these two issues, which amounts to a portion of his total hours performed. *Id.*, ¶ 7.

Defendants object that the legal fees Plaintiff claims under Section II.B.1.B of the Court's September 8, 2008, Report fail to comply with Report by not specifically itemizing recoverable fees in Plaintiff's Motion and failing to provide adequate support for appellate work performed by Mr. Parrish. D.E. 1472, at 1-2 ; 1492, ¶¶ 11, 23. As a result, Defendants argue, the taxable legal fees are presently both ascertainable and unverifiable. D.E. 1472, at 1-2. Specifically, Defendants assert that Mr. Carlson's November 24, 2008, affidavit does not address Mr. Parrish's appellate work regarding the expert damages report issue, even though Mr. Carlson includes an opinion regarding Mr. Parrish's work on the issue of jury instructions. *Id.*, ¶¶ 9, 15,  20. Thus, Defendant contends Mr. Parrish's work regarding the issue of the expert damages report lacks any support from an expert affidavit. *Id.* Furthermore, Defendants complain that while Mr. Parrish states that he kept time records regarding his appellate work for Plaintiff, Plaintiff has not provided these records in support of his Motion. *Id.*, ¶ 15. Based on these deficiencies, Defendants assert Plaintiff's request for fees should be denied entirely. *Id.*, ¶ 24.

Regarding the appeal of both the jury instructions issue and the expert damages report, in the Court's review of the record, the Court agrees with Defendants that Plaintiff has submitted no billing

records regarding Mr. Parrish's expenditure of time on these issues in support of the pending Motion, despite the Court's request for such information, and Mr. Parrish's statement that he kept time records for this work.  *See* D.E. 1467, 1470, 1490.  Further, in the Court's own review of the docket, the Court notes that the appendix in support of Plaintiff's original verified motion for attorney's fees also does not provide any time records regarding work performed by Mr. Parrish on either issue. [D.E. 1395].[10]

Nonetheless, despite the lack of billing records, the Court notes that Mr. Parrish attested to his work on the appellate level regarding the issues of jury instructions and the expert damages report, and provided the specific number of hours to apportion to recoverable issues in his sworn affidavit.  While it is true that Plaintiff's expert Mr. Carlson only opined on Mr. Parrish's work regarding the jury instructions issue at the appellate level in his November 24, 2008, affidavit,  the Court finds that Mr. Parrish's sworn statement alone suffices to establish that Mr. Parrish worked on both recoverable issues of jury instructions and the expert damages report.  Further, the Court notes that as Mr. Parrish was the only appellate attorney, he had to have worked on the recoverable issues because they were raised on appeal by Plaintiff, as evidenced by the Eleventh Circuit's opinion which discussed these issues.  *See First BUC Appeal.*

---

[10]  The Court notes that the appendix filed in support of Plaintiff's original verified motion for attorney's fees and costs included a retainer agreement between Plaintiff and Mr. Parrish dated November 26, 2004, an invoice dated January 7, 2008, from Mr. Parrish to Plaintiff, and a letter from Mr. Parrish to Plaintiff dated January 7, 2008, which enclosed detailed time records for Mr. Parrish's work for the dates July 11 and 20, 2007, and October 25, 29, and 30, 2007.  *See* D.E. 1395-5, at 42-46. The dates of these time record entries fall after the date of the decision in the first appeal to the Eleventh Circuit Court of Appeals, *BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 489 F.3d 1129, 1135 (11th Cir. June 21, 2007), and, thus, do not relate to the recoverable issues on the first appeal.

The Court acknowledges that Plaintiff could have provided more or better support for his request for fees expended at the appellate level, but notes that under Eleventh Circuit precedent, the Court should not decline altogether to award Plaintiff fees, even when a party's fee applications is deficient. *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). "The court . . . is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." 836 F.2d at 1303 (citing *Hensley*, 461 U.S. at 433). In light of Mr. Parrish's sworn attestation that he worked on the recoverable issues of jury instructions and the expert damages report, as well as Mr. Parrish's identification of his specific apportionment of hours to these issues, the Court holds that Plaintiff has met the burden, albeit minimally, of itemizing the hours for which he seeks fees regarding the recoverable portion of the jury instructions and the expert damages report issues at the appellate level, for at least the entitlement to fees.

## 2.       Calculation of Attorneys' Fees

Having determined that Plaintiff is the prevailing party and is, therefore, entitled to his attorneys' fees, the Court now turns to a calculation of the reasonable attorneys' fee. This Circuit has adopted the lodestar method to determine a reasonable attorneys' fee. *Norman v. The Housing Authority of the City of Montgomery*, 836 F.2d 1292 (11th Cir. 1988). In computing the lodestar, the first step requires determination of the reasonable hourly rate. A "reasonable hourly rate" has been defined as "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation." *Loranger v. Stierheim,* 10 F.3d

776, 781 (11th Cir. 1994) (quoting *Norman*, 836 F.2d at 1299).  The Court is deemed an expert on

the issue of hourly rate and may properly consider "its own knowledge and experience concerning

reasonable and proper fees and may form an independent judgment either with or without the aid of

witnesses as to value." *Loranger*, 10 F.3d at 781 (quoting *Norman*, 836 F.2d at 1303).

Once the hourly rate is set, the Court must determine the reasonable number of hours

expended in the litigation. This analysis focuses on the exclusion of hours "that would be

unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation*

*or experience of counsel.*" *ACLU of Georgia v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999) (quoting

*Norman*, 836 F.2d at 1301) (emphasis in original).  The burden of establishing that the time for

which compensation is sought was reasonably expended on the litigation falls on the fee applicant.

*See ACLU of Georgia*, 168 F.3d at 428.  The fee applicant must provide the Court with specific and

detailed evidence that will allow the court to determine accurately the amount of fees to be awarded.

*Id.*  If the party moving for the fees fails to exercise required billing judgment, the Court is obligated

to do so by reducing the amount of hours and "pruning out those that are excessive, redundant or

otherwise unnecessary." *Id*.

      **a.**    **Reasonable Hourly Rates**

In calculating a lodestar amount, the Court must first determine whether the hourly rates

sought are reasonable.  *Norman* discussed the evidence needed to satisfy a fee applicant's burden of

demonstrating reasonable rates:

> Satisfactory evidence at a minimum is more than the affidavit of the
> attorney performing the work. *Blum [v. Stenson]*, 465 U.S. [886] at
> 896 n. 11, 104 S.Ct. at 1547 n. 11, 79 L.Ed.2d 891.  It should also be
> noted that in line with the goal of obtaining objectivity, satisfactory

> evidence necessarily must speak to rates actually billed and paid in similar lawsuits. Testimony that a given fee is reasonable is therefore unsatisfactory evidence of market rate. *See Hensley*, 461 U.S. [424] at 439 n. 15, 103 S.Ct. [1933] at 1943 n. 15, 76 L.Ed.2d 40. Evidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence. The weight to be given to opinion evidence of course will be affected by the detail contained in the testimony on matters such as similarity of skill, reputation, experience, similarity of case and client, and breadth of the sample of which the expert has knowledge.

*Norman*, 836 F.2d at 1299. Satisfactory evidence may also include citations to prior precedents showing reasonable rate adjudications for the fee applicant, for comparable attorneys, or for comparable cases. It should also be noted that, although the Eleventh Circuit set forth the new lodestar approach in *Norman*, it reiterated that at least some of the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974), still have some utility in establishing the hourly rate.[11]  *Norman*, 836 F.2d at 1299.

---

[11]   The twelve *Johnson* factors that may be considered when setting a fee include:

> (1) the time and labor required;
> (2) the novelty and difficulty of the issues;
> (3) the skill required to perform the legal services properly;
> (4) the preclusion of other employment;
> (5) the customary fee;
> (6) whether the fee is fixed or contingent;
> (7) the time limitations imposed by the client or circumstances;
> (8) the amount involved and the results obtained;
> (9) the experience, reputation and ability of the attorneys;
> (10) the undesirability of the case;
> (11) the nature and length of professional relationship with the client; and
> (12) the awards in similar cases.

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974).

a.      *Reasonable Fee for Hours Attributed to Trial Level Work*

In this case, at the time of trial, Plaintiff retained the firm of Kluger, Peretz, Kaplan & Berlin, P.I.  *See* D.E. 1067.  As stated above, in support of Mr. Carlson's November 24, 2008, affidavit, Plaintiff submitted Exhibit A, a list of all time entries regarding the jury instructions issue, and Exhibit B, a list of all time entries regarding the expert damages report issue, of which Plaintiff only seeks to recover a portion from Defendants. [D.E. 1470, 2-4].  The names and their corresponding initials that appear in Exhibits A and B  include "Savarese" (LJS),  Lipscomb" (MKL), "Rivera" (MRR), "Chesal" (MBC), "Steiger" (MDS), "Truba" (WRT), and "Peretz" (SIP).  [D.E. 1470, at 2].

In support of Plaintiff's current Motion before the Court, Plaintiff states that his expert, Mr. Carlson, has examined the billing records set forth in the appendix to Plaintiff's original verified motion for attorney's fees in order to make his recommendation regarding what are reasonable legal fees to tax Defendants.  D.E. 1467.  Mr. Carlson's  November 24, 2008, affidavit proffers that a reasonable hourly rate for the individuals listed in Exhibits A and B is $350.00.  D.E. 1467-2, ¶¶ 1, 2.

In opposition to the hourly rate of $350.00 asserted by Plaintiff, Defendants contend that Plaintiff failed to provide any detail of the attorneys' experience levels or hourly rates, as specifically required by the Court's January 13, 2009, Order.  D.E. 1492, ¶ 18, 24, 25. Defendants take the position that if the Court does not deny fees entirely, alternatively, Plaintiff should receive only an hourly rate of $150.00, as warned by the Court in the Court's January 13, 2009, Order, for failing to comply with the Order.  *Id.*

In the Court's review of the record regarding fees incurred at the district court level, the Court was able to identify the hourly rates for Steven Peretz, Michael Chesal, L. J. Savarese, M. Keith Lipscomb, Marielis R. Rivera, William R. Trueba, Jr., and Mirit D. Steiger.  A retainer agreement dated February 20, 2002, between Plaintiff and the law firm of Kluger, Peretz, Kaplan & Berlin, P.A, showed an hourly rate for Steven Peretz and Michael B. Chesal of $385.00.  *See* D.E. 1395, at 6-18; at 6.  However, this retainer agreement does not discuss the experience level or expertise of Mr. Peretz or Mr. Chesal to justify the $385 rate.  *Id.* Further, the retainer agreement does not provide fees charged for other attorneys or paralegals/legal assistants. *Id.*

Additionally, the Court examined the billing records previously provided by Plaintiff in his appendix in support of his original verified motion for attorney's fees [*See* D.E. 1395] in order to identify the hourly rates for Steven Peretz, Michael Chesal,  L. J. Savarese, M. Keith Lipscomb, Marielis R. Rivera, William R. Trueba, Jr., and Mirit D. Steiger.  According to Exhibits A and B to Mr. Carlson's November 24th affidavit, all the time entries for these individuals fall between the dates February 25, 2004, and April 26, 2004.  *See* D.E. 1470, at 2-4.  The Court has reviewed the billing records for this three-month time period submitted by Plaintiff to identify the hourly rates per named individual. [D.E. 1352, at 4-7; 1395-3, at 38-59, 64-70].  Based on these billing records, it appears that Steven Peretz was a founding member with an hourly rate of $400, Michael Chesal was a member with an hourly rate of $325, William R. Trueba, Jr., was an associate with an hourly rate of $250, Mirit D. Steiger was an associate with hourly rate of $240, M. Keith Lipscomb was an associate with an hourly rate of $200, Marielis R. Rivera, was a paralegal with an hourly rate of $125

and $135, and L. J. Savarese, was a legal assistant with an hourly rate of $75 and $100. *See* D.E. 1395-2, at 7-8; 1395-3, at 59, 70.

The Court also notes that Plaintiff previously submitted another affidavit by Mr. Carlson dated January 7, 2008, in support of Plaintiff's original verified motion for attorney's fees. [D.E. 1387-2]. At the time, as all legal fees and costs were at issue for Plaintiff's original verified motion for attorney's fees, Mr. Carlson stated he reviewed all of the extensive billing records in this case. *Id.*, ¶ 2.

After review of the docket, the Court finds that Plaintiff made no proffer as to the experience level or expertise of any of the attorneys, legal assistants, or paralegals listed in Exhibits A and B, to justify a rate of $350 an hour. Furthermore, while Plaintiff's expert Mr. Grafton has previously provided assertions that he has reviewed the billing records regarding this case, he has not set forth any basis for the reasonableness of the hourly rate of $350 for any of the seven of these individuals. Nor has he opined that attorneys or paralegals of comparable qualifications and experience handling comparable cases receive hourly rates of $350 for like work. Although the Court is well aware of the fine reputations of at least some of these attorneys, without evidence in the record of the information described above – which the Court specifically requested in its January 13, 2009, Order – Plaintiff has simply failed to meet his burden to provide any basis for the Court to award an hourly rate of $350 for each of these seven attorneys.

Even more significant, however, is the fact that the copies of the original billing records submitted by Plaintiff in his appendix to his original motion for verified attorney's fees do not support a $350 billable rate for all of these individuals. Specifically, as stated above, of the seven

27

individuals for whom Plaintiff seeks fees, two are not attorneys and had billed at a rate below $150.

Moreover, the Court notes that of the five attorneys for which Plaintiff seeks fees, only one attorney

had a billable rate above $350 at the time.  The Court is not inclined to grant Plaintiff an award of

fees against Defendants for any hourly rate above that that Plaintiff paid his own counsel, without

substantial justification, which Plaintiff here has not provided.  On the other hand, just because

Plaintiff's billing records show that certain attorneys were paid an hourly rate does not mean that the

Court must award Plaintiff these billable rates, as Plaintiff has not provided the Court with

justification for these specific rates in his Motion or in Mr. Carlson's affidavit, or anywhere else in

the record.  Based on the foregoing, Plaintiff has failed to provide any substantiation for a reasonable

hourly rate of $350.

The Court has provided Plaintiff with numerous opportunities to provide all information to

the Court in support of his Motion,[12] and, in fact, as noted above, warned Plaintiff in its January13,

---

[12]   As noted in the Court's January 13, 2009, Order [see D.E. 1480], the Court has
previously granted Plaintiff numerous extensions regarding Plaintiff's attorney's fees motions
and supportive information, in order to accommodate Plaintiff's schedule and various other
circumstances presented by Plaintiff to the Court.  After several extensions, Plaintiff filed his
original affidavit for attorney's fees on January 7, 2008 [See D.E. 1387], and his actual verified
motion for attorney's fees on April 7, 2008 [see D.E. 1387].  After Defendants filed their
responses, due to obligations outside of Florida and personnel problems arising from inclement
weather, Plaintiff requested and the Court granted two more extensions of time to file his reply to
his verified motion for attorney's fees [see D.E. 1428, 1436].  Plaintiff finally filed his reply on
August 28, 2008.  [See D.E. 1443].

Judge Dimitrouleas issued his Order [see D.E. 1458] affirming the finding of Plaintiff's
entitlement to certain attorney's fees and costs, as set forth in the September 8, 2008, Report and
Recommendation [see D.E. 1451], on September 24, 2008.  As such, Plaintiff's pending Motion
for Specified Attorney's Fees was originally due thirty days later.  After thirty days, due to
vacation plans, Plaintiff requested, and the Court granted, an extension to file his Motion before
the Court.  See D.E. 1461, 1462.  Plaintiff finally filed his Motion for Specified Amount of
Attorneys' Fees on November 24, 2008.  [D.E. 1467].  Defendants timely filed their response,
but once again, on December 19, 2008, citing illness and the holiday season, Plaintiff asked for

2009, Order that if Plaintiff failed to provide such information, the Court would assume that the work was performed by newer associates and would set a reasonable hourly rate, accordingly, at $150.00.

As *Norman* made clear, "[t]he court . . . is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value."  836 F.2d at 1303 (citing *Hensley*, 461 U.S. at 433).  In light of Plaintiff's failure to provide information regarding the level of expertise or experience of his attorneys, legal assistant and paralegal for whom he seeks fees, or an expert affidavit providing a basis for the reasonableness of a $350 hourly rate, and in view of Plaintiff's disregard of the Court's January 13, 2009, Order, noting it would grant an hourly rate of $150, without further information, the Court holds that for attorneys Steven Peretz, Michael Chesal, William R. Trueba, Jr., Mirit D. Steiger, and, M. Keith Lipscomb, an hourly rate of $150 is reasonable.  The Court further holds that for paralegal Marielis R. Rivera and legal assistant  L. J. Savarese, an hourly rate of $50 is reasonable.  *See Godoy v. New River Pizza*, 565 F. Supp.2d 1345,

---

an extension of time, this time in order to file his reply.  *See* D.E. 1473.  However, before the Court could render a decision on Plaintiff's extension request, after Defendants noted their opposition to the extension, Plaintiff filed his reply on December 22, 2008.  [D.E. 1476].  At that time, Plaintiff's Motion became ripe for recommendation by the Court.  Even then, however, the Court provided Plaintiff one more opportunity to supplement his Motion in its January 13, 2009, Order, by specifically requesting information and providing Plaintiff time to supplement his Motion with information by a specific deadline.  Plaintiff again requested and received an extension of time to file his response by February 3, 2009, but the Court expressly warned Plaintiff that it did not anticipate granting additional extensions of time in the absence of extenuating circumstances.  Despite the notice, Plaintiff did not provide the information requested by the January 13, 2009, Order.

1347-48 (S.D. Fla. 2008) (where expert failed to set forth training or expertise of paralegal, $50.00 per hour for the paralegals is reasonable).

      b.    *Legal Fees for Hours Attributed to First Appeal to the Eleventh Circuit Court of Appeals*

      According to the January 7 and November 24, 2008, affidavits of Mr. Carlson, Plaintiff's expert witness in support of Plaintiff's Motion, legal work by Mr. Parrish attributed to the appeal for the jury instructions issue totals between $2,750 and $5,500, which Mr. Carlson represents is between 5% and 10% of the $55,000 paid to Phillip P. Parish, Esq., to represent Plaintiff on appeal. *Id.*; *see also* D.E. 1490.  Plaintiff supplemented this information with Mr. Parrish's affidavit in Plaintiff's Response to the Court's Order of January 13, 2009, on February 3, 2009.  [D.E. 1490, 1490-2].  In his affidavit, Mr. Parrish states that for his appellate work on behalf of Plaintiff, at the time, his hourly rate was $300, and he billed 132.7 hours in *total* for the appeal, of which only 66.8 hours involved the two recoverable issues of the jury instructions and the expert damages report. D.E. 1490-2, ¶ 5.  In support of this hourly rate of $300, Mr. Parrish submitted his resume, which reflected that he has been practicing law for over twenty five years and he is an AV- rated, board-certified appellate attorney.  *See* D.E. 1490-3.  Furthermore, Mr. Parrish's resume states that he is a sole practitioner specializing in appeals and civil litigation, and he has previously been a partner at two other firms.  *Id.*  Plaintiff's Response to the Court's Order of January 13, 2009, asserts that a fee of $20,040, which corresponds to the number of hours Mr. Parrish states he worked on the recoverable issues (66.8 hours), multiplied by $300, is reasonable.  D.E. 1490, ¶ 1.

      To counter Plaintiff's assertion that $300 is a reasonably hourly rate for Mr. Parrish's appellate work, Defendants assert that Plaintiff's expert, Mr. Carlson, failed to opine on the

reasonableness of the $300 hourly fee in his November 24, 2008, affidavit.  D.E. 1492, ¶ 21. Consequently, Defendants contend that Plaintiff's assertions of the reasonableness of $300 is without expert support.   Besides requesting that Plaintiff's Motion be denied entirely, Defendants alternatively suggest that Mr. Parrish should be given an hourly rate of only $150, in light of the Court's January 13, 2009, Order.  *Id.*, ¶¶ 24, 25.  Further, Defendants argue that instead of an hourly rate, Mr. Parrish should only be paid 5% to 10% of the overall amount *spent* for fees, which is $39,810 (132.7 total hours x $300 = $39,810), on the *sole issue of jury instructions*, for a total of between $1,990.50 and $3,981, instead of between $2,750 and $5,500 (which is 5% to 10% of $55,000 paid in fees), as suggested by Mr. Carlson's November 24th affidavit. *Id.*, ¶ 19.

After consideration of the record, the Court notes that contrary to Defendants' assertions, the failure of Mr. Carlson to address the reasonableness of a $300 hourly rate for Mr. Parrish's work does not mean that Plaintiff's entitlement to $300 is without support.  Unlike Plaintiff's failure to submit details regarding the level and expertise of his attorneys and paralegals /legal assistants who performed work at the trial level, here, Plaintiff provided other evidence giving an independent basis to determine the reasonableness of a $300 hourly rate, including Mr. Parrish's sworn affidavit, as well as his detailed resume regarding his expertise and years of practice.  Based on the Court's own experience and knowledge of prevailing market rates for similar services in the South Florida legal community, as well as on the Court's review of Mr. Parrish's qualifications, the Court finds that an hourly rate of $300 for Mr. Parrish's appellate work  on the two recoverable issues, is reasonable and appropriate.

### b.     Hours Reasonably Expended

The Court must next determine the reasonableness of the hours expended by Plaintiff's counsel.  A fee applicant must set out the general subject matter of the time expended by the attorney "with sufficient particularity so that the court can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303.  "[A] lawyer may not be compensated for hours spent on activities for which he would not bill a client of means who was seriously intent on vindicating similar rights." *Id.* at 1301.  Thus, fee applicants are required to use "billing judgment." *Id.*  In ascertaining the number of reasonable hours, a court must deduct "excessive, redundant or otherwise unnecessary hours" from those claimed.  *Id.*

The Court has reviewed the time entries provided by Plaintiff to determine whether the hours expended on recoverable issues in this matter were excessive, redundant or otherwise unnecessary in the exercise of billing judgment.  *Perkins v. Mobile Housing Board*, 847 F.2d 735, 738 (11th Cir. 1988).   The lists of time entries submitted in Exhibits A and B for trial work, as well as the hours asserted by Mr. Parrish for appellate work, reflect that at the trial court level, Plaintiff seeks 34 hours for the issue of the jury instructions and 19 hours for the issue of the expert damages report, and at the appellate level, Plaintiff requests compensation for 66.8 hours expended by Mr. Parrish. Defendants do not object to any of the specific entries or the numbers of hours that Plaintiff seeks regarding any of these recoverable issues.  *See* D.E. 1472, 1492.

The Court finds that the hours identified by Plaintiff are not excessive, redundant or otherwise unnecessary in the exercise of billing judgment.  Particularly in view of Defendants' lack of objection and considering each of the factors that governs the reasonableness of fees set forth in

*In re Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292 (11th Cir. 1988), the Court finds that with respect to the issues of the jury instructions and the expert damages report, the hours sought by Plaintiff at the trial court level, as well as the hours apportioned to recoverable issues at the  appellate level, are reasonable under these circumstances.

Specifically, considering the appellate work first, the Court recommends compensating Plaintiff for the 66.8 hours requested by Plaintiff regarding all appellate work by Mr. Parrish attributable to these recoverable issues.

As for trial fees, although the Court concludes that Plaintiff should be reimbursed for all hours claimed in furtherance of the recoverable issues, the analysis requires a little bit more detail because some hours were performed by attorneys and some by paralegals, thus, requiring compensation at different rates.  As stated above, Plaintiff represented that for all trial level fees regarding the issues of the jury instructions and the expert damages report, he was seeking only a portion of the total hours listed in Exhibits A and B of Mr. Carlson's November 24, 2008, affidavit. As these recoverable hours requested by Plaintiff are not tied to specific entries in Exhibits A and B, the apportionment of these hours to either attorneys or legal assistants/paralegals must be determined by the Court.

Regarding the hours expended on the issue of the expert damages report at the trial level, from the face of Exhibit B, it is clear from the entries that all 31 hours[13] attributable to the expert damages report issue, of which Plaintiff only seeks to recover 19 hours from Defendants, were

---

[13]  According to Exhibit B to Mr. Carlson's November 24, 2008, Affidavit, the entries identified by an asterisk ("*"), which include four entries with the hours 7.50, 4.5, 9.5 and 9.5, when added up, total 31 hours.

33

expended by Mr. Peretz, an attorney.  As such, the Court recommends granting Plaintiff 19 hours at an attorney rate.

Looking at the hours expended on the issue of jury instructions at the trial, although the total of 176.23 hours of entries listed in Exhibit A include expenditures of time by both paralegals and attorneys, Plaintiff does not specify which of the 34 hours he seeks to recover out of the 176.23 total hours of entries listed in Exhibit A.  Consequently, the Court cannot determine from a review of the records submitted how many hours should be awarded at a paralegal's rate and how many should be awarded at an attorney's rate.

The Court has, therefore, calculated the percentage of time attributable to attorneys and paralegal/legal assistants from the total hours of 176.23, and finds that attorneys' hours total 173.4 hours,[14] or 98.39% of the 176.23 hours, and paralegal/legal assistants' hours total 2.83 hours,[15] or 1.61% of the 176.23 hours. Applying these same percentages to the 34 hours for which Plaintiff seeks to recover for the jury instructions issue, the Court recommends that Plaintiff should be

---

[14] According to Exhibit A to Mr. Carlson's November 24, 2008, affidavit, of the total 176.23 hours listed, the hours attributable to attorneys Steven Peretz, Michael Chesal, William R. Trueba, Jr., Mirit D. Steiger, and, M. Keith Lipscomb are as follows:

2.3 (Lipscomb) + 8.2 (Lipscomb) + 3.1 (Lipscomb) + 8.4 (Lipscomb) + 9.3 (Lipscomb) + 8.2 (Lipscomb) + 12.5 (Lipscomb) + 8.1 (Lipscomb) + 14.5 (Chesal) +2.8 (Lipscomb) + 9.1 (Lipscomb)  + 11.0 (Chesal) + 9.4 (Steiger) + 9.2 (Lipscomb) + 6.2 (Truba) + 10 (Peretz) + 9.5 (Steiger) + 6.0 (Peretz) + 7.0 (Chesal) + 7.5 (Steiger) + 11.1 (Steiger)   = 173.4 total hours expended by attorneys

[15] According to Exhibit A to Mr. Carlson's November 24, 2008, affidavit, paralegal Marielis R. Rivera expended 1 hour, and legal assistant L. J. Savarese expended 1.83 hours (.17 + 1.66), for a total of 2.83 hours.

awarded 33.45 hours at the attorney rate,[16] and 0.55 hours at the paralegal/ legal assistant rate.[17]

In total, at the trial level, adding recoverable time for both the jury instructions issue and the expert damages report issue, Plaintiff should receive 52.45 hours for attorney time,[18] and 0.55 hours attributable to paralegal/legal assistant hours.

**B.     Total Award of Attorney's Fees**

In order to determine the total award of fees, the Court must multiply the reasonable hourly rates by the reasonable numbers of hours.  The following is a summary of the Court's calculations:

> Trial Level Work:
>
>  Attorneys:                            $150.00  an  hour  x  52.45  hours =
> $7,867.50
>
> Legal assistants/ paralegals:   $50.00 an hour x 0.55 hours = $27.50
>
>      Subtotal fees for trial level work        ($7,867.50 + $27.50) =
> **$7,895**
>
> Appellate Level Work
>
> Mr. Parrish:                            $300 an hour x 66.8 hours = **$20,040**

**Total of trial and appellate level work  ($7,895 + 20,040) = *$27,935***

Overall, the Court has considered each of the factors set forth in *In re Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292 (11th Cir. 1988), that govern the reasonableness of

---

[16]  34 hours x 98.39%, = 33.45 hours.

[17]  34 hours x 1.61% = 0.55 hours.

[18]  The calculation is 33.45 attorney hours for jury instructions issue, plus 19 attorney hours for expert damages report issue, which equals 52.45 hours.

fees.  Based on a thorough review and the above calculations, I recommend that Plaintiff should be allowed recoverable fees from Defendants for the lodestar amount of **$27,935**.

### III. Recommendation

Upon reviewing Plaintiff's Motion for Specified Amount of Attorneys' Fees and Costs, and the Court file, it is hereby **RECOMMENDED** that Plaintiff's Motion for Specified Amount of Attorneys' Fees [D.E.1467] be **GRANTED in part** and **DENIED in part**, for a total of **$27,935** in fees.

Pursuant to Local Magistrate Rule 4(b), the parties have ten (10) days from service of this Report and Recommendation to file written objections, if any, with the Honorable William P. Dimitrouleas, United States District Judge.  Failure to file written objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal any factual findings contained herein.  *R.T.C. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (*en banc*);[19] 28 U.S.C. §636(b)(1).

**FILED AND SUBMITTED** at Fort Lauderdale, Florida, this 2nd day of March, 2009.

_____
ROBIN S. ROSENBAUM
United States Magistrate Judge

cc:    The Honorable William P. Dimitrouleas
       Counsel of Record

---

[19] Decisions rendered by Unit B of the former Fifth Circuit constitute binding precedent in the Eleventh Circuit.  *Stein v. Reynolds Secs., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982).